UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FABIOLA GARCIA,

    Defendant.

                               /

Case No.  1:15:CR:210-03

HON. GORDON J. QUIST

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING MOTION TO SUPPRESS STATEMENTS (ECF No. 34)

Defendant, Fabiola Garcia, has been charged with two counts related to food stamp fraud. The indictment alleges that Garcia conspired with her mother and sister to defraud the food stamp program by charging benefit recipients a commission to convert their benefits into cash at a store operated by Garcia's family—La Fortuna Carniceria (La Fortuna). On January 9, 2014, federal agents executed a search warrant at Garcia's residence and La Fortuna. While the warrants were being executed, Garcia made statements to federal agents and helped translate statements made by her mother. Garcia has moved to suppress those statements, arguing that she was illegally detained when she gave the statements and that she should have been provided with *Miranda* warnings. On March 21, 2016, the Court held an evidentiary hearing and received testimony from Garcia and several officers involved in executing the search warrants, as well as several exhibits and a video taken at Garcia's residence during a portion of the search. Following the hearing, the parties submitted additional briefs. The matter is now ready for decision.

*Findings of Fact*

USDA-OIG Special Agent Mark McClutchey was the lead investigator into alleged food stamp fraud at La Fortuna, a small grocery store located at 207 North Michigan Avenue in Shelby, Michigan.

In connection with that investigation, McClutchey obtained search warrants for La Fortuna and Garcia's residence at 320 North State Street (the residence).  Teams of six to eight officers arrived at each location around 11 a.m. on January 9, 2014, planning to execute the two search warrants simultaneously.

When officers arrived at the residence, they knocked, got no answer, and then opened an unlocked door.  The officers found two adult males, two young children, and an older child in the residence.  Officers handcuffed the two adult males because they were uncooperative.

Garcia was working at a restaurant until shortly before the search warrants were executed. Sometime between 10:30 and 11 a.m., Garcia left the restaurant to go home and check on her children. When Garcia drove by La Fortuna, she saw law enforcement officers in front of the store.  Garcia stopped and identified herself as the daughter of La Fortuna's owner. The officers said that they were there to execute a search warrant, and that they planned to break down the door.  Garcia asked them not to break down the door and said that she could get a key from her house.  The team leader for the store search responded that would be fine.  The team leader sent an officer to follow Garcia and retrieve the key.

Garcia drove her vehicle to the residence followed by at least one officer.[1]  When Garcia arrived at the residence, she parked on the street because there was a vehicle in her driveway.  When she got out of her vehicle, however, officers told her to get back into her car. The officers then moved the car that was in the driveway and had Garcia move her car into the driveway.

McClutchey was leading the team executing the warrant at the residence.  He received word from the team at La Fortuna that Garcia was on her way to the residence, and McClutchey met Garcia

---

[1] Garcia testified at the evidentiary hearing that officers at the store pulled a gun on her when she tried to move. Garcia did not mention that fact in her brief, and it was unconfirmed by any other witness.  Accordingly, the Court finds Garcia's allegation that officers at the store pulled a gun on her incredible.

2

when she arrived at around 11:15 a.m.[2] McClutchey told Garcia that officers were conducting a search of the residence, that she was not under arrest and was free to leave, but that he would like to speak with her. Garcia responded "okay." Because it was cold outside, McClutchey suggested that they sit in a truck outside the residence, which had been left running. McClutchey did not give Garcia *Miranda* warnings.

U.S. Forest Service Special Agent Mike Evans joined Garcia and McClutchey in the truck. Garcia sat in the back seat, and the agents sat in the front. For just under an hour, the agents asked Garcia about drug activity and food stamp fraud. At around 12:10 p.m., the interview concluded, and Garcia went into the residence to take care of her children. McClutchey stayed in the truck and interviewed Garcia's sister, who had arrived at the residence while McClutchey was speaking with Garcia.

After concluding the interviews, McClutchey went to La Fortuna to check on the search and interview Garcia's mother. At some point thereafter, Garcia went to La Fortuna. While she was at La Fortuna, Garcia helped to translate some portions of the interview with her mother.

### *Conclusions of Law*

Garcia argues that she was illegally detained from the time she began speaking to officers at La Fortuna, and that she was subject to a custodial interrogation without *Miranda* warnings. Thus, she argues, any statements she provided must be suppressed. In response, the Government argues that Garcia was never detained or subject to a custodial interrogation.

"[The Sixth Circuit] has previously articulated a number of factors to be considered in

---

[2] The parties disagree about whether Garcia entered the residence before the interview. McClutchey testified that he met Garcia outside the residence at 11:15 a.m., and that she never entered the residence before the interview. Garcia testified that she went into the residence, found the key, and then officers placed her in a room with the children while they finished the search. Although Garcia probably entered the house momentarily, the Court concludes that the interview began directly after Garcia arrived at the residence at 11:15 a.m., and that officers did not place her in a room prior to the interview.

determining whether a person is detained such that his Fourth Amendment rights are triggered, including 'the transportation of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force.'" *United States v. Shaw*, 464 F.3d 615, 621 (6th Cir. 2006). There is no credible evidence that any of those factors is present in this case. After Garcia spoke to officers at La Fortuna, she left and drove herself back to her residence. The fact that an officer followed her to get the key does not indicate that Garcia was detained, nor does the fact that officers told her where to park when she arrived at the residence. Once she arrived at the residence, Garcia willingly followed McClutchey into the truck to answer some questions. Finally, there is no credible evidence that Garcia's movements were restricted during the interview with McClutchey and Evans.

Those same facts lead the Court to conclude that Garcia was not subject to a custodial interrogation, and she was, therefore, not entitled to *Miranda* warnings. "The *Miranda* rule's application is limited to 'custodial interrogations,' which the Supreme Court has defined as, 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way.'" *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 713 (1977)). Thus, a suspect is entitled to *Miranda* warnings only if she is "actually taken into custody or the restraint on h[er] freedom . . . rise[s] to the level associated with a formal arrest." *Id.* Courts look to "the totality of circumstances . . . to determine how a reasonable [person] in the suspects's position would have understood the situation." *Id.* (internal quotation marks omitted). Courts may consider the following factors: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*,

606 F.3d 875, 883 (6th Cir. 2010). "[T]he ultimate inquiry is whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1529 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983)).

In this case, a reasonable person in Garcia's position would not have understood that she was in custody. Garcia drove her own vehicle from La Fortuna to the residence with an officer following her for the purpose of retrieving the key. Once Garcia arrived at the residence, she was not handcuffed or placed under arrest. On the contrary, McClutchey explicitly told Garcia that she was not under arrest. The interview took place just outside her residence, in a parked truck. Garcia was not frisked or handcuffed. There is no credible evidence that Garcia was restrained or subject to restrictions on her movement following the interview. Accordingly, the Court concludes that Garcia was not subject to a custodial interrogation.

## *Conclusion*

For the foregoing reasons, the Court will deny Garcia's motion to suppress.

A separate order will enter.


Dated: June 17, 2016              /s/ Gordon J. Quist
                                  GORDON J. QUIST
                                  UNITED STATES DISTRICT JUDGE.